UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DR. SHAMIK BHATTACHARYA, PHD,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)　Case No. 1:22-CV-00043-MTS
　　　　　　　　　　　　　　　　　　)
THE BOARD OF REGENTS SOUTHEAST　　)
MISSOURI STATE UNIVERSITY, et. al.,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff has filed a six-count Complaint against the Board of Regents, Southeast Missouri

State University[1] (the "University") and eleven other individuals including each individual

member of the Board of Governors, as well as the University's President, Provost, Dean of the

College of Science Technology, Engineering and Mathematics, Chairperson of the Department of

Engineering and Technology, and the Director of Human Resources, globally asserting civil liberty

violations and contractual disputes. All of Plaintiff's claims, however, should be dismissed as they

fail to state claims upon which relief may be granted.

Despite the grandiose, self-serving, and often offensive allegations, Plaintiff's Complaint

is irredeemably plagued with factual assertions that demonstrate he is not entitled to relief. The

six-count Complaint contains three duplicative claims addressing retaliation for the exercise of

Freedom of Speech—each Count illustrating through his own allegations that Plaintiff did not

---

[1] Although Plaintiff has filed his lawsuit against the Board under their former name, the Board of
Regents, the Board notes that its legal name has changed to the Board of Governors pursuant to
RSMo. §174.450.1 and that the correct Defendant to this litigation is, the ***Board of Governors,
Southeast Missouri State University***.

engage in protected speech, but rather reflected his own disagreement concerning a "departmental realignment" that separated the "pure" science from "applied" sciences. In addition, the exhibits he attached to his Complaint additionally illustrate that any actions taken by the University (and the individual Defendants) were aimed at Plaintiff's disruptive behavior and not the content of his personal gripes. Two counts are dedicated to Procedural Due Process. However, the facts supporting these due process allegations demonstrate that Plaintiff received any and all due process protections to which he was due. Plaintiff's final count for purported Breach of Contract with the University appointing him as a professor, but inexplicably brought against all Defendants including each individual Defendant who are not alleged to have been a party to any such contract, also fails.

Consequently, Plaintiff's Complaint should be dismissed in its entirety.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint and provides a means to eliminate those actions "which are fatally flawed in their legal premises ... thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)*). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly,* 550 U.S. at 556, 562. A motion to dismiss is likely to be granted where a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *See Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982).

## ARGUMENT

## I.  PLAINTIFF'S FREEDOM OF SPEECH RETALIATION CLAIMS UNDER COUNT I, II, AND III OF PLAINTIFF'S COMPLAINT FAIL BECAUSE PLAINTIFF DID NOT ENGAGE IN PROTECTED SPEECH

Counts I-III of Plaintiff's Complaint are largely duplicative claims, and each is devoid of the necessary facts to demonstrate that Plaintiff's alleged speech was protected under the First Amendment.[2]

"It is well understood that the right of free speech is not absolute at all times and under all circumstances [that] [t]here are certain well-defined and narrowly limited classes of speech, the

---

[2] To be clear, Defendants deny that Plaintiff was treated adversely in any way due to the content of his speech, whether or not that speech was protected. As should be clear from the Exhibit P and Q attached to the Complaint and referenced in paragraphs 142, 147, and 151 of the Complaint, Plaintiff was held accountable for the manner and mode in which he aired his personal grievances and the way he treated other faculty, administrators and students.

prevention and punishment of which has never been thought to raise any Constitutional problem [that] [t]hese include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words–those which by their very utterance inflict injury or tend to incite an immediate breach of the peace [and that] [i]t has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572 (1942).

It is also well settled that public employers may also discipline employees whose otherwise protected speech adversely impacts the integrity or functions of the public employer or adversely affects internal morale.  Thus, even when the speech at issue is determined to have First Amendment protection, the court must then "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

One of the required elements of any First Amendment claim by a public employee is that the employee "engaged in protected speech." *Littrell v. City of Kansas City*, 459 F.3d 918, 922 (8th Cir.2006). A public employee's speech is protected only in certain circumstances. *Bartis v. City of Bridgeton*, No. 4:06-CV-1574 JCH, 2007 WL 1486024, at *3–4 (E.D. Mo. May 18, 2007). As a threshold matter an employee must be speaking as a citizen on a matter of public concern. *Pickering,* 391 U.S. at 568. If the employee's speech does not meet this requirement, then no First Amendment cause of action arises.  *Bradley v. James*, 479 F.3d 536, 538 (8th Cir. 2007). Only after employees pass the threshold requirement of showing that their speech touched on a matter of public concern, defined as speech "relating to any matter of political, social, or other concern to

the community" is the Court to then engage in further review of the governmental action at issue. *Connick v. Myers*, 461 U.S. 138, 146 (1983) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 570 (1968), (collectively referred to as the Pickering-Connick test).

Absent these necessary elements, Plaintiff's First Amendment claims fails.

### a.  Counts I, II, and III of Plaintiff's Complaint Fail to Demonstrate Plaintiff's Speech was a Matter of Public Concern.

The Supreme Court has explained in *Connick* that the purpose of the "public concern" threshold test is to prevent the federal courts from becoming "a roundtable for employee complaints over internal office affairs." *See Connick,* 461 U.S. at 149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark— and certainly every criticism directed at a public official— would plant the seed of a constitutional case."). *Id.*

In this case, Plaintiff prefaces his individualized Counts with a "Facts" section that repeatedly makes clear that he bases his "free speech" claims on a purely internal dispute with a "Department Realignment" (Complaint, FACTS, §III, ¶¶72-85).  By way of example, his first description of his alleged speech related complaints is entitled "**Dr. Bhattacharya is disciplined for spirited protest of the SEMO's assignment of preferred lab space to the 'pure' science faculty.**"[3] (Complaint, FACTS, §VI(i), p. 18).  He then describes in his Complaint that his criticisms concerned "how the Departmental Reorganization would impact the day-to day work performed by the faculty…" including access to lab and research space, the location and perceived quality of lecture space, as well as the perceived unfairness of the administration distinguishing

---

[3] It is the "spirited" nature of Plaintiff's behavior, rather than the content of his gripes, that the University found to be problematic.  (Complaint, Exhibits P and Q)

between "pure" and "applied" sciences. (Complaint ¶¶ 102-108). These allegations, clearly and undisputedly internal disputes, are foundational to each of his First Amendment claims in Counts I, II, and III:

Count I: Defendants punished Plaintiff "for expressing his views regarding SEMO's motivations and rational [sic] for the department changes…" (Complaint, ¶157), and "about the need to keep the lab well organized…" (Complaint, ¶159), and "informing students about the necessary course work to become an engineer." (Complaint, ¶160).[4]

Count II: Defendants took "adverse employment action against him based upon his speech about the department realignment." (Complaint, ¶173)

Count III: "Plaintiffs continued employment with the University was compromised when he expressed his viewpoint regarding the departmental realignment." (Complaint, ¶181)

It should be clear that although pled as separate claims, Counts I, II and III of Plaintiff's Complaint contain legally and factually identical allegations.  Because the three Counts are indistinguishable, they will be addressed as one legal claim, which combined still fall short of demonstrating a legally cognizable claim and should be dismissed.

Plaintiff's claim in Counts I, II and III rest entirely upon the misperception that his asserted speech was protected under the First Amendment as the departmental realignment that purported

---

[4] From these facts Plaintiff then pirates common phrases used in the First Amendment cases to make the entirely self-serving assertion that such internal disputes "related to a matter of political, social, and pedagogical concern for the community and transcends personal interest." (Complaint, ¶160).  This characterization is not a fact but is a legal conclusion for the Court. *Connick*, 461 U.S. at 148 n. 7, 150 n. 10, (1983); *McGee v. Pub. Water Supply, Dist. #2 of Jefferson County, Mo*., 471 F.3d 918, 920 (8th Cir. 2006); *Wright v. City of Salisbury, Missouri*, 656 F. Supp. 2d 1013 (E.D. Mo. 2009)

physically separated the "pure" science faculty and lab space from the "applied" sciences is an internal matter and not a matter of public concern.

> i.   **Plaintiff's "spirited protest" to a Colleague concerning the departmental realignment was not a matter of public concern.**

Here, Plaintiff's speech and use of vulgarities, and even his assertion that those who favored the realignment were "fucking racists" was not addressing a matter of public concern, but was instead a private, albeit loud, admonishment of a University decision and its impact upon him individually. *See Gumbhir v. Curators of Univ. of Missouri*, 157 F.3d 1141, 1145 (8th Cir. 1998) (upholding the district court's decision that plaintiff was not speaking on matters of public concern when criticizing his academic colleagues as such comments were not to benefit the public.) Indeed, Plaintiff pleads that this statement was motivated by the "ground implication" that he had to share labs with students and had to walk 5 minutes to his lab space. *See* Complaint ¶¶ 106, 110. Taken in context, Plaintiff's statement is simply an employee complaint, not a matter of public concern. *See Wingate v. Gage County School Dist.*, No. 34, 528 F.3d 1074,1080–81 (8th Cir.2008) (holding that "[w]here a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no First Amendment interests are at stake."). *Chapter 7 Tr. Fredrich Cruse v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:20-CV-00366-MTS, 2021 WL 3784895, at *4 (E.D. Mo. Aug. 26, 2021) (citing *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009)) ("[W]e have consistently held that a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command."); *Ferrara v. Mills*, 781 F.2d 1508, 1511 (11th Cir. 1986) (holding that plaintiff's speech, "constituted nothing more than a series of grievances with school administrators over internal school policies and, therefore, was not protected under the First Amendment.")

*Ferrara* is instructive. In *Ferrara*, the plaintiff, a high school social studies teacher, expressed his disapproval of school officials allowing physical education teachers and athletic coaches to teach social studies, asserting that "such out-of-field placement of teachers contribute[d] to civic illiteracy." 781 F.2d at 1510. As the Eleventh Circuit held in *Ferrara*, "We also do not doubt [the plaintiff's] sincere interest in and commitment to quality public education. We hold merely that a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Id.* at 1516; *See also*, *Hong v. Grant*, 516 F. Supp. 2d. 1158 (C.D. Cal. 2007), *aff'd,* 403 App'x 236 (9th Cir 2020).

Whether an employee's speech addresses a matter of public concern, must be determined not only by its content, but also by its form and context. *Connick v. Myers*, 461 U.S. 138, 151-2 (1983). The non-public nature of Plaintiff's complaints is further illustrated by the private forum in which each "spirited protest" occurred. Each comment that Plaintiff asserts as protected was made in private, directed only towards another faculty member or individual student, and indeed was only "incidentally" overheard by others. (Complaint ¶ 115). In context, Plaintiff's "speech," even by his telling, was not meant to be anything more than a private disparagement of the University and its programs. *Sparr v. Ward,* 306 F.3d 589, 595 (8th Cir. 2002) (noting "the internal nature of [the plaintiff's] speech is a factor to be considered"); *Harrison v. Oakland Cnty*., 612 F. Supp. 2d 848, 867–68 (E.D. Mich. 2009).

### ii. Plaintiff's Comments to a Colleague concerning the setup of his lab was not a matter of public concern.

Similarly, Plaintiff's statement addressing the set up for Plaintiff's lab was not a matter of public concern. The statement merely reflected Plaintiff's personal frustration that a colleague did not assist Plaintiff in setting up a lab for a class Plaintiff was assigned to teach. (*See* Complaint ¶¶

117, 122). Plaintiff can hardly assert that the setup of his lab on this occasion impacts the community as a whole. Consequently, Plaintiff's statement cannot constitute protected speech.

> ### iii. Plaintiff's Comments to Student concerning the University Curriculum was not a matter of public concern nor was he speaking to the student as a private citizen.

The Supreme Court has further held that whether or not a public employee spoke as a citizen is determined by whether or not the speech was "pursuant to [his] official duties." If made as part of his official duties, the speech is not subject to First Amendment protections. *Garcetti v. Ceballos*, 547 U.S. 410 (2006). When a public employee's speech is purely job-related, his speech will not be deemed a matter of public concern. *Sparr*, 306 F.3d 589, 594 (8th Cir. 2002) (citing *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999)). "Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Id.* It is not enough that the topic of an employee's speech is one in which the public might have an interest. *Sparr*, 306 F.3d at 594, citing *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993). The court determines whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests. *Garcetti,* 547 U.S. at 410. This inquiry is a practical one conducted by the Court focusing on the duties that the employee is actually expected to perform, rather than his formal job description. *Id.*

In two more recent cases, the Eighth Circuit applied *Garcetti*. First, it held that an engineer employed by a county water company to advise the company on water treatment options did not speak as a citizen when he made critiques about a water treatment facility's safety. *McGee v. Pub. Water Supply, Dist. #2 of Jefferson County, Mo., 471 F.3d 918, 920 (8th Cir. 2006)*. Next, it held that a campus police officer, who accused his superior officer of being intoxicated on the job, did not speak as a citizen because he made the accusations during the course of an official investigation with which he had to cooperate. *Bradley v. James*, 479 F.3d 536, 537-38 (8th Cir. 2007). Quoting

*Garcetti*, the *Bradley* Court held that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created."

According to Plaintiff, Plaintiff's statement to his student was made in Plaintiff's capacity as a professor (Complaint, ¶¶ 137-140) and he was addressing University curriculum and its impact upon a particular student pursuant to his "fundamental pedagogical commitment," which Plaintiff asserts he was "***hired to do.***" (Complaint, 141, 185). In other words, Plaintiff's comments were not made as a private citizen, but rather in context were made in his role as a professor.

### iv.    The University's Departmental Realignment was a Business Decision not an Attempt to Establish Orthodoxy.

Plaintiff cannot self-servingly use language from other First Amendment cases to merely recharacterize the University's administration's lawful decision to conduct a departmental realignment that drew a distinction between the "pure and "applied" sciences as an attempt to establish an "orthodoxy." Cases that have challenged government action on the grounds of "establishment of orthodoxy" typically involve policies related to "politics, nationalism, or religion… or [policies that] force citizens to confess by word or act their faith therein" (*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), holding that flag salutes are a violation of students' First Amendment rights.) *See also Meriwether v. Hartop*, 992 F.3d 492, 518 (6th Cir. 2021), holding that it was a violation of First Amendment rights to discipline a devout Christian professor who refused to address students by their preferred pronouns; also *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952), (holding that the State cannot require its employees to affirm a loyalty oath in denunciation of their past affiliation with Communism.)

In contrast, inarguably, and as Plaintiff acknowledges, the University's decision to realign its Engineering Department and "pure" science departments to physically separate them was part of "a large-scale reorganization that affected nearly every program in the school." (Complaint ¶ 74.)  This Restructuring Proposal, as plead by Plaintiff, was designed to address significant financial shortfalls due to decreased budgeting. (Complaint, ¶ 75). The decision to place Engineering Physics into the newly developed Engineering and Technology Department was simply a business decision, not an attempt to establish a political, nationalistic or religious orthodoxy.

Additionally, the University's decision to discipline Plaintiff for his personal gripes concerning the departmental realignment cannot constitute an attempt to establish orthodoxy. The theory is inapplicable outside of free speech. *Trejo v. Shoben*, 319 F.3d 878, 884 (7th Cir. 2003) (noting the establishment of orthodoxy as an infringement on ***First Amendment speech***) As previously noted, Plaintiff's comments were not matters of public concern and, thus, did not constitute First Amendment speech.

Plaintiff has, therefore, failed to establish the University's actions as an attempt to establish orthodoxy and such claim must be dismissed.

### b.    Plaintiff's Conduct was Subject to Disciplinary Action.

As Exhibits P and Q, make clear, the underlying basis for any discipline of Plaintiff included only the manner in which he treated colleagues and students, and reflected only his personal grievances, and not matters of public concern:

(1)    On September 3, 2021, Plaintiff instigated a confrontation with colleague in which Plaintiff exhibited a loud and agitated demeanor and made disparaging remarks about the department chair that was overheard by several witnesses, including students.

11

(2)     On September 21, 2021, Plaintiff complained about his lab set-up and leveled hostile and baseless allegations against another colleague.

(3)     As a result of the two aforementioned infractions, on October 13, 2021, Plaintiff received a written reprimand for intimidation and the use of obscene language and malicious name-calling.

(4)     On two subsequent separate occasions, Plaintiff displayed an unprofessionally and belligerently in a conversation with a student about the student's status as a mechanical engineer. The student then complained of the bullying treatment, but not of the content of the conversation. (Complaint, Exh.S)   After Plaintiff's first interaction with the student, Plaintiff then confronted the department chair about the interaction with the student, accusing the chair of lying to perspective students. During Plaintiff's second interaction with the student, Plaintiff told the student that the department chair was forcing him to "teach courses that do not go together."

(5)     When Plaintiff learned that the student had complained about Plaintiff's treatment of the student, Plaintiff then evinced a clear retaliatory attitude by indicating to administration that this student needed to withdraw, mid-semester, from the class because Plaintiff could no longer be impartial regarding the student.

In each of the above cited incidents, Plaintiff's contentions were personal grievances aired within the context of his employment—not as a matter of public concern. "[W]e do not conceive academic freedom to be a license for uncontrolled expression at variance with established curricular contents and internally destructive of the proper functioning of the institution" *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1972) "When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only

by the content of the employee's message but also by the manner, time, and place in which it is delivered." See *Connick*, 461 U.S. at 153. (See also *Fong v. Purdue*, 692 F. Supp. 930, 951 (N.D. Ind. 1988), holding that the plaintiff "irresponsibly made captious remarks to a captive audience…that was composed of students who were dependent on him for grades and recommendations," and that such conduct was not protected by the First Amendment.); *Martin v. Parrish*, 805 F.2d 583 (5th Cir. 1986); *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419 (1st Cir. 1986).

Because the speech was not a matter of public concern, it was speech for which he could be disciplined. As noted above, even if the speech was a matter of public concern, that does not end the constitutional inquiry. Under the *Pickering-Connick* test, even employees who pass the threshold requirement of showing that their speech touched on a matter of public concern, then they must show that their free speech interests outweigh the employer's interests, including the interest in maintaining an environment conducive to loyalty and harmony.  *Connick v. Myers*, 461 U.S. 138 (1983). When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Id. at 151–52.  "Certain legitimate interests of the State may limit a teacher's right to say what he pleases: for example, (1) the need to maintain discipline or harmony among coworkers; (2) the need for confidentiality; (3) the need to curtail conduct which impedes the teacher's proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between the employer and his superiors, where that relationship calls for loyalty and confidence." *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1972)

Despite Plaintiffs attempt to elevate his complaints to constitutional status, it is clear that he has not sufficiently alleged a matter of public concern, but rather only an internal organizational

dispute over a departmental realignment that focuses on the distinction between a "pure" and "applied" science.  Plaintiff is no doubt sincere in his position, but his personal conviction is not a matter of public concern.  Even according to Plaintiff, it is a business decision.  Plaintiff has not and cannot demonstrate that his speech was a matter of public concern or more generally, that Plaintiff engaged in protected speech under the First Amendment. Consequently, Plaintiff's conduct was rightfully subject to disciplinary action.

## II.  PLAINTIFF'S DUE PROCESS CLAIMS UNDER COUNTS IV AND V LACK MERIT AND MUST BE DISMISSED

### a.  Plaintiff's Handbook due process claims are not cognizable

In Count IV of Plaintiff's Complaint, Plaintiff's sole argument for lack of due process is based upon the perceived notion that at some time in the future he ***will not*** receive a fair and impartial hearing before the Board of Governors prior to his separation of employment. His argument is couched upon the allegations that the standards upon which he is to be judged are unconstitutionally vague and his subjective expectation that the University administration's reprimand of Plaintiff's actions demonstrate the University will not be impartial. These allegations, however, do not entitle Plaintiff to any legal relief.

Count IV is framed to seek injunctive relief—Plaintiff seeks a remedy for an event that has not yet occurred. In fact, Plaintiff separately filed a Motion for Injunctive Relief, which was denied. (Dkt. # 7). In Count IV Plaintiff alleges no injury that has actually already occurred, and therefore, outside of injunctive relief, has not pled any cognizable claim for which relief may be granted. Nor can Plaintiff allege in good faith any future harm under Count IV. By agreement of the parties the hearing before the Board of Governors was not conducted, and Plaintiff cannot in good faith raise any anticipation that it will be conducted.  In light of the Court's denial of the Temporary Restraining Order and the lack of pendency of any further disciplinary hearing, Count

IV should be dismissed.  Consequently, Count IV of Plaintiff's Complaint should be dismissed.

      **b.**     **Plaintiff's due process claims also fail as a matter of law as plaintiff received the process in which he was Due**

As a threshold matter, the law is clear that it is federal constitutional law, not the terms of any Employee Handbook, that determines the process Plaintiff would be constitutionally due. *de Llano v. Berglund*, 282 F.3d 1031, 1035 (8th Cir. 2002) (rejecting the plaintiff's argument that prior to termination he was entitled to the process described in the North Dakota State University ("NDSU") policy and holding "Federal law, not state law or NDSU policy, determines what constitutes adequate procedural due process"). Nor does Plaintiff correctly state the extent of process that is constitutionally mandated.  For the University to be in compliance with Plaintiff's constitutional due process rights as a tenured professor, it need only provide the Plaintiff with notice and opportunity for hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *See also de Llano v. Berglund*, 282 F.3d 1031, 1034-35 (8th Cir. 2002).

In this case, Plaintiff admits in his Complaint that he received notice of the complaints made against him and was provided with an opportunity for hearing.  (Complaint ¶¶148, 151, and 154; Exs. E, P and Q).  Plaintiff's Complaint, therefore, demonstrates that Plaintiff received and/or will receive the due process to which he may be entitled.

      **c.**     **The Grounds for Plaintiff's Discipline were not Unconstitutionally Vague.**

Plaintiff's arguments concerning the "unconstitutional vagueness" of the University's evaluation standards is wholly misplaced and ignores decades of jurisprudence. Courts have long held that any internal standards of behavior, particularly for public employees, are permissibly intended to address "unanticipated conduct disruptive of the educational process" and therefore,

unlike criminal statutes, need not be stated with precision. *Arnett v. Kennedy*, 416 U.S. 134, 161 (1974). Such standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge. *Id.* at 159. The standard is also examined "as applied" as to whether it is vague as applied to the affected party. *See United States v. Mazurie*, 419 U.S. 544, 550, (1975). As such standards of behavior are understood in the context of the particular employment setting, and what can normally be expected given the nature of the profession involved. *Parker v. Levy*, 417 U.S. 733, 754 (1974) *See, e.g. San Filippo v. Bongiovanni,* 961 F.2d 1125, 1137 (3d Cir. 1992) (holding that professor's vagueness claim failed as he violated the mores of the academic community.); *Perez v. Hoblock*, 368 F.3d 166, 169 (2nd Cir. 2004) ("any action detrimental to the best interests of racing" was not void for vagueness). The Supreme Court has accepted far more less descriptive rules of behavior as not constitutionally vague. *Arnett*, 416 U.S. at 159 ("such cause as will promote the efficiency of the service"). Not surprisingly, then, other courts have upheld similar standards of behavior for public employees, particularly those in an academic setting. *See, e.g.   San Filippo,* at 1133 ("serious ethical violations of his responsibilities" not constitutionally vague); *Fowler v. Board of Education*, 819 F. 2d 657, 664-5 (6th Cir. 1987)("conduct unbecoming a teacher" is not constitutionally vague); *Wishart v. McDonald*, 500 F.2d 1110, 1111 (1st Cir. 1974) ("conduct unbecoming a teacher ... or other good cause" not constitutionally vague); *diLeo v. Greenfield*, 541 F.2d 949, 953 (2d Cir. 1976) (termination of a teacher for "due and sufficient cause" not void for vagueness); *Allen v. City of Greensboro, N.C.*, 452 F.2d 489, 491 (4th Cir. 1971) (upholding standard of "conduct unbecoming an officer"). Given the nature of what is supposed to be a collegial setting, as well as the written and oral admonitions given to Plaintiff, Plaintiff can hardly

16

claim that he was not fairly warned that continued hostile, demeaning and unprofessional behavior would lead to his termination.  (Complaint, Exs.  E, P and Q).

### III.    PLAINTIFF'S DUE PROCESS CLAIMS IN COUNT V UNDER THE MISSOURI ADMINISTRATIVE PROCEDURES ACT LACK MERIT AND MUST BE DISMISSED

In Count V, Plaintiff relies upon the Missouri Administrative Procedures Act (MAPA) to support his claim for lack of due process and argues that the University should be required to adhere to the MAPA due process requirements.  That statute, however, is facially inapplicable. RSMo. §536.018 specifically exempts higher education institutions, such as the University, from MAPA requirements as long as it has its own written procedures that satisfy *constitutional principles* of due process." *Edoho v. Bd. of Curators of Lincoln Univ.*, 344 S.W.3d 794, 798 (Mo. App. 2011); *Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 715 (Mo. App. 2011).

As noted above regarding Count IV, the only constitutional process due to Plaintiff was "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)) And, as noted above, Exhibits P and Q, as well as paragraphs 142, 134, 151 and 154 to Plaintiff's Complaint proves that Plaintiff received all constitutionally mandated process due him.

Apparently undeterred by this dispositive line of authority, Plaintiff attempts to degrade the constitutional protections of University's written separation procedures by arguing that the University President is given too much authority and deference in the termination process. However, this argument has also already been addressed and rejected by Missouri Courts interpreting the MAPA. *See Suppes v. Curators of the Univ. of Missouri*, 529 S.W.3d 825, 828–30 (Mo. App. 2017). In *Suppes*, Plaintiff argued that the University's procedures failed to provide due process under the MAPA because the Chancellor was vested with the ultimate decision-making

authority. *Id.* at 828. The Court found federal law, not the state law, determines what constitutes adequate procedural due process. *Id.* at *830.* (citing *Loudermill*, 470 U.S. at 541). The Court further stated that "once it is determined that one is afforded with notice and an opportunity to be heard in accordance with *Loudermill*, the constitutional requirement is satisfied." *Id.*

Plaintiff's subsequent arguments addressing the insufficiency of post-termination due process procedures are irrelevant due to the fact that Plaintiff's employment with the University has not been terminated.  Although Plaintiff has received notice of the University's intention to terminate his employment, he was also made aware that the Board would need to vote on the decision—as required by Mo Rev. Stat § 174.140.  This meeting has not yet occurred. Consequently, Plaintiff's arguments are premature and lack substance.

Plaintiff's claims in totality fail to demonstrate he was not afforded due process and therefore, they must be dismissed.

## IV.    PLAINTIFF'S CONTRACT CLAIMS FAIL AS PAINTIFF CANNOT DEMONSTRATE BREACH.

Plaintiff contends that the University has breached the Employment Agreement, which he has submitted as Exhibit D. (Complaint, ¶43) Plaintiff then asserts that  the University breached its employment agreement with Plaintiff by (1) not providing "necessary lab space"; (2)  not following written procedures for terminating a tenured professor; and (3) commencing an alleged "show trial" in the determination of Plaintiff's separation of employment. (Complaint ¶¶ 220-224). Each of these claims, however, lack merit and should be dismissed.

### a.    Plaintiff Fails to State a Claim for Breach of Contract against any individual Defendant.

Although Plaintiff makes clear that his Employment Agreement is with the University, he nonetheless has globally sued "Defendants" for an alleged breach of contract.  There is no allegation that any individual Defendant was a party to the Employment Agreement. None of the

individual Defendants are alleged to be a party to the Employment Agreement. Without belaboring the point, Count VII should be dismissed as to each individual Defendant—all eleven of them.

### b.   Failure to Provide Plaintiff with Preferred Laboratory Space did not Constitute Breach of Plaintiff's Employment Agreement.

Plaintiff Employment Agreement is void of any terms promising certain laboratory space. Nothing in the Agreement makes any such promise. Moreover, the Agreement includes a merger clause declaring it the "full and complete agreement between the parties, and that all understandings, agreements, and terms and conditions are reflected in [the] document." That agreement was then entered into and signed by Plaintiff on April 18, 2017. (Complaint, ¶43, and Ex. D). Despite Plaintiff's reliance on his version of bargaining history, Plaintiff cannot rely on alleged pre-contract negotiations to expand the scope of his agreement. *See Silver Dollar City, Inc. v. Kitsmiller Const. Co.*, *Inc.,* 931 S.W.2d 909, 914 (Mo. App. 1996) ("It is well established in Missouri that the parol evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous.").

If, as Plaintiff's argues, he negotiated for specific laboratory space because it was critical to the performance of his duties, he could have ensured such terms were included within the written agreement. Instead, Plaintiff read and entered into his agreement, acknowledging the merger clause which forecloses any arguments that the written terms were incomplete. *See Med. Shoppe Int'l, Inc. v. Stopa*, No. 4:07-CV-642 (CEJ), 2008 WL 3538980, at *3 (E.D. Mo. Aug. 11, 2008) (holding that the merger clause foreclosed the parties' belief that the contract included additional terms outside of those written within the agreement). Under these circumstances, Plaintiff cannot contend that failure to provide specific laboratory space constituted a breach of his employment agreement. *See Graham Const. Servs., Inc. v. Hammer & Steel, Inc.*, No. 4:11CV1316 JCH, 2012 WL 5438994, at *5 (E.D. Mo. Nov. 7, 2012) (citing *Cook v. Little Caesar Enterprises, Inc.*, 210

F.3d 653, 658 (6th Cir.2000)) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement.").

   **c.**  **The University's followed Written Procedure to initiate the separation of Plaintiff's Employment and, therefore, its Actions did not Constitute Breach.**

Exhibits C, E, P, and Q[5] outline both the internal procedural steps contemplated by the Handbook in the case of a termination of a professor, as well as the implementation of each step conducted by the University.  To initiate proceedings, the Handbook requires review of the charges/complaints against a professor by a departmental review committee and then it contemplates a final review and employment determination by the Board of Governors. (Complaint, Ex. C).  Plaintiff received written Notice of all misconduct allegations against him. (Complaint, Ex. P).  The Notice further described prior verbal meetings University administration had with Plaintiff discussing his misconduct and its disciplinary consequences. The University informed Plaintiff that a departmental review committee would be formed to review the charges/complaints against Plaintiff. (Complaint, Ex. Q). Finally, the University president informed Plaintiff that a hearing would be conducted in front of the Board of Governors to make a final determination as to Plaintiff's employment. (Complaint, Ex. E) Together, these documents all demonstrate that the University substantially and appropriately followed the termination procedures outlined in its Handbook.

Conspicuously absent from Plaintiff's Complaint is any allegation that any particular provision was not provided. In short, his Complaint fails to allege in what way the University has

---

[5] Plaintiff also references the "January notice" given to him by President Vargas at ¶151 and 154 of his Complaint.

breached its contractual commitments.  Absent those substantive allegations, his claim of breach

of contract fails. Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 556. *Iqbal*, 556 U.S. at 678.

### d.    Plaintiff's Unsupported Allegations of a "Show Trial" do not Constitute a Breach of Plaintiff's Employment Agreement.

Plaintiff correctly pleads that the University is a governmental institution created and

governed by Missouri statute. (Complaint, ¶1). As Plaintiff pleads, the Missouri Statutes vest the

Board of Governors with discretion and final authority to terminate a professor. (Complaint, ¶ 16,

n. 3). Although Plaintiff asserts that the disciplinary hearing before the Board of Governors would

be sham based upon the great deference given to the University President, such allegations,

supported only by his bare allegations of a "Show trial," do not alter the analysis regarding a

purported breach of contract.[6]

First, Plaintiff has not identified any provision of his contract that has actually been

breached.  Without admitting that the Board did or does show any deference to the President of

the University, there is no provision of the contract that indicates that the Board is prohibited from

doing so.[7] Even the argument that doing so would indicate <u>unlawful</u> bias, at no time does Plaintiff

---

[6] Prior to Plaintiff's notice of a termination hearing before the Board of Governors, Missouri law was amended by the Missouri legislature to allow the Board to actually to *delegate* termination decisions to the President of the University. RSMo §172.100

[7] The extended process adopted by the University in Exhibit C attached to the Complaint includes many steps that are taken before a termination decision by the Board of Governors takes place. Indeed, it would be the rare place of employment that includes so many procedural safeguards against termination. The final step is a determination by the Board of Governors, who collectively would understand that prior administrative steps have been taken.  It is thus ironic that Plaintiff contends that provision of all of those steps culminating in a referral to the Board of Governors is evidence of bias because in the prior step Plaintiff was recommended for termination. Plaintiff's argument proves too much.  In short, Plaintiff would have it that no one---not his Dean, the Provost, the President, or the Board of Governors may decide to terminate his employment because the person administratively below them recommended it. In other words, he is immune from termination.

plead even the most rudimentary facts identifying any decision-maker's alleged bias. The term "unbiased" has a specific meaning. A "biased" decision-maker refers to someone with a "pecuniary interest in the outcome" of the matter. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). There is not the slightest hint of such an allegation in Plaintiff's Complaint. A decision-maker is not considered biased solely because he has gained familiarity with the case facts due to his or her administrative role. *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999). Furthermore, it is the Plaintiff's burden to overcome the presumption of the decision-maker's impartiality. *Id.* Without the required supporting facts, Plaintiff simply makes conclusory allegations that do not meet the pleading standards of *Twombly,* 550 U.S. 540 (2007). Plaintiff's allegations of a breach of contract fall well below the minimum pleading standard.

## V.      INDIVIDUALLY NAMED DEFENDANTS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY AGAINST CLAIMS FOR DAMAGES.

Although Plaintiff namely seeks injunctive relief for his claims, he additional seeks the following damages:

> E.      Normal, compensatory, and punitive damages for the violation of Dr. Bhattacharya's First and Fourteenth Amendment and contractual rights, including lost wages and reputational harm;

> F.      Dr. Bhattacharya's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988.

(Complaint, Prayer for Relief ¶¶ E-F). Such requests for damages are barred against governmental employees sued in their "official capacities". *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 92 (1989).

The University is a governmental entity subject to the protection of Eleventh Amendment Immunity. *See Swatzell v. Bd. of Regents , Se. Missouri State Univ.*, No. 1:16-CV-00262 JAR, 2017 WL 3116150, at *3 (E.D. Mo. July 21, 2017). This immunity extends to University employees sued in their official capacity for damages.  *See Andrus*, 197 F.3d at 955.  While claims for damages against governmental employees in their individual capacities are permitted to proceed, Plaintiff has recently made clear, through his Motion to Dismiss, that his claims against the individually named University employees are only brought against them in their official capacities. (Dkt. # 9). As a result, Plaintiff's claims for damages against University personnel are barred under the Eleventh Amendment and his request for damages, as it relates to those individually named Defendants, must be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Complaint should be dismissed.

Dated:  June 14, 2022                    ARMSTRONG TEASDALE LLP


                                         By:  */s/ Brittney J. Herron*
                                               Robert A. Kaiser, #31410MO
                                               Brittney J. Herron, #69131MO
                                               7700 Forsyth Blvd., Suite 1800
                                               St. Louis, Missouri 63105
                                               Telephone:  314.621.5070
                                               Fax:  314.621.5065
                                               rkaiser@atllp.com
                                               bherron@atllp.com

                                         ATTORNEYS FOR DEFENDANTS


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 14th day of June, 2022, the foregoing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all counsel of record.

                                         */s/ Brittney J. Herron*

24